In the Matter of John DICKINSON, A potential witness before the grand jury.

John DICKINSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 1100, Docket 85–6018.

United States Court of Appeals, Second Circuit.

Argued April 18, 1985.

Decided May 28, 1985.

David W. Ely, New York City (Ivan S. Fisher, Fisher & Ely, P.C., New York City, of counsel), for appellant.

Peter A. Norling, New York City (Raymond J. Dearie, U.S. Atty., Allyne R. Ross, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, NEWMAN and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

John Dickinson ("Dickinson") appeals from an order of the United States District Court for the Eastern District of New York (Nickerson, *Judge*), dated December 28, 1984, denying his motion to terminate an order holding him in civil contempt for refusing to testify before a grand jury, pursuant to 28 U.S.C. § 1826 (1982), removing the direction for his commitment to custody, and imposing on him a daily fine of $1,500 until he agrees to testify, the term of the grand jury expires, or the grand jury determines it no longer requires his testimony.

Dickinson argues on appeal that the district court's imposition of a $1,500 daily fine as a modification of his civil contempt sanction of incarceration was improper. He contends that: 1) imposition of a fine in the situation herein would have no greater coercive effect than incarceration has had; 2) given his poverty, imposition of a daily fine violates due process in that the fine would be in essence a form of future pun-

ishment for a present refusal to testify; and 3) once a finding has been made that incarceration is of no coercive effect, as occurred herein, imposition of a daily fine is prohibited by prior decisions of this Court. The government argues that: 1) since the testimony sought by the grand jury relates to funds which at one time were in Dickinson's possession and might, if located, be subject to forfeiture pursuant to 18 U.S.C. § 1961 *et seq.* (1982) or 21 U.S.C. § 848 (1982), there is reason to believe that a fine would be more coercive than incarceration; 2) although the coercion of actual payment may not be present, the pressure of ultimate payment is presently felt; and 3) prior decisions of this Court do not in principle preclude imposition of a fine following the release of a contemnor from confinement if the court has reason to believe the fine would be more coercive than the confinement.

We hold that the district court did not abuse its discretion in finding that, in view of the circumstances herein, a fine might be more coercive than incarceration. In addition, the district court properly concluded that prior law permits imposition of a fine against Dickinson, despite the court's finding that incarceration was without coercive effect. Moreover, we hold that, even if Dickinson is financially unable to pay the fine as it accrues daily, the knowledge that he will eventually have to pay may presently coerce him to testify, and, as such, the fine is not punitive in nature.

We therefore affirm the decision of the district court.

## BACKGROUND

On June 18, 1982, the United States District Court for the Eastern District of New York, Neaher, *Judge,* sentenced Dickinson to a term of three years imprisonment for his felony conviction for willfully failing to report the transportation of currency outside the United States, in violation of the Currency and Foreign Transactions Reporting Act ("Reporting Act"), 31 U.S.C. §§ 1101, 1059(2) (1976). The district court

also sentenced Dickinson to concurrent one-year terms of incarceration for his conviction on three counts of making false statements in passport applications, in violation of 18 U.S.C. § 1542 (1976).

The Reporting Act violation arose from Dickinson's transport of $860,000 in cash from the United States to Great Britain on August 29, 1980. In a decision dated April 21, 1983, this Court reversed the Reporting Act felony conviction, finding, however, that the underlying misdemeanor Reporting Act violation survived as a lesser included offense. *United States v. Dickinson,* 706 F.2d 88 (2d Cir.1983). On July 28, 1983, the district court resentenced Dickinson to a one-year term, to run consecutively to the sentence previously imposed for the passport violations, and to a $1,000 fine.

While the felony conviction was on appeal, Dickinson was convicted in the United States District Court for the Western District of Washington for violations of narcotics laws and was given a six-year prison sentence, to run concurrently with his Eastern District of New York sentence.

On September 3, 1983, Dickinson was produced in the Eastern District of New York pursuant to a writ of habeas corpus *ad testificandum.* His testimony was sought by a grand jury, investigating violations of the Reporting Act. On February 15, 1984, Dickinson appeared before the grand jury, which sought information from him about his failure to report the $860,000 in cash which he transported out of the United States. Specifically, the grand jury sought to question him concerning "the identity of the legal or beneficial owners, and the direct sources and recipients of the transported funds for which he was convicted," as well as his unexplained possession of additional currency at the time of the arrest. Dickinson refused to testify, citing his rights under the first, fourth, fifth, sixth, and ninth amendments to the United States Constitution. After having been granted use immunity pursuant to 18 U.S.C. §§ 6002, 6003 (1982), on April 4, 1984, he was ordered by the district court

to testify before the grand jury. He still refused to do so, and, by order dated April 6, 1984, the district court adjudged him to be in civil contempt and ordered him incarcerated until he responded to the grand jury's questions, or until the term of the grand jury expired, or the grand jury determined that it no longer required his testimony. Since at the time of the contempt order Dickinson was still in custody for his criminal convictions, the effect of the order was to interrupt his service of his criminal sentences for so long as he was committed pursuant to the civil contempt order.

Eight months after incarceration based on the civil contempt order, by motion dated December 10, 1984, Dickinson moved to terminate the order. He argued that the incarceration had failed to coerce him to respond to the grand jury's inquiry and that there was no substantial likelihood that it ever would. In particular, he contended that, at the Metropolitan Correctional Center, where he was lodged, he had not been receiving necessary medical treatment. He stated that, as a "brittle diabetic," he was in need of regular insulin injections, exercise, and an appropriate diet. He asserted that his physical condition was steadily deteriorating because he was routinely fed sweets and permitted to exercise only once per week. He claimed that both his willingness to endure not simply incarceration, but worsening health, and his daily fear of a medical emergency in order to persist in his refusal to testify demonstrated the steadfastness of his position and was predictive of the unlikelihood of future coercion.

On December 28, 1984, "in the light of (1) the length of the sentence [Dickinson was] serving for a narcotics violation of which he was convicted in the Western District of Washington, (2) the extent of the remaining term of the grand jury [which was convened on January 30, 1984], and (3) his evident determination not to feel coerced by additional incarceration," the district court modified the order of civil contempt and removed the direction for his commitment to custody. In lieu thereof, the court imposed on Dickinson a daily fine of $1,500

until he gives testimony, the term of the grand jury expires, or the grand jury determines that it no longer requires Dickinson's testimony. It is from this order that Dickinson appeals.

## I

The primary purpose of the imposition of a sanction for civil contempt is to coerce the contemnor into future compliance and to remedy past non-compliance, rather than to punish him. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979). Since "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed," *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972), once a contemnor establishes that there is no "substantial likelihood" that continued confinement would accomplish its coercive purpose, the confinement becomes punitive in nature, at which point due process requires its termination. *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir.1981). Herein, considering the length of the sentence Dickinson was serving for his narcotics violation, the extent of the remaining term of the grand jury, and Dickinson's apparent determination not to testify, the district court found that continued confinement of Dickinson had lost its remedial force. Under the circumstances herein, we find the district court's conclusion to be reasonable. We therefore find that the district court properly terminated Dickinson's incarceration for contempt.

## II

Apropos the district court's imposition of a fine on Dickinson for each day he persists in his refusal to testify, we find that, given the wide discretion accorded a district court in fashioning a remedy for civil contempt, *Vuitton*, 592 F.2d at 130, and, given the district court's responsibility

88

to make an "individualized decision" in assessing the most effective coercive remedy, *Simkin v. United States*, 715 F.2d 34, 38, 39 (2d Cir.1983), imposition of a fine on Dickinson was also justifiable.

As the government notes, the district court's discretion clearly permits, as a coercive device, the imposition of a fine. *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 670 (2d Cir.), *cert. denied*, 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983). Thus, there is no question that the district court herein had the power, at least initially, to impose a coercive fine. Dickinson contends, however, that imposition of a fine on a contemnor following his release from custody is improper, as a release from custody implies that the lesser coercive sanction of a fine will be equally without coercive effect.

■ We find that the circumstances in the instant case support the district court's conclusion that a fine well might be more coercive on Dickinson than incarceration. The testimony sought by the grand jury and refused by Dickinson related to Dickinson's transportation of $860,000 in cash outside the United States. In addition, during Dickinson's trial for his Reporting Act violation, evidence was adduced showing Dickinson's access to large sums of cash prior to his Reporting Act violation and up until his arrest thirteen months later. In light of Dickinson's connection to this money, the district court concluded that his refusal to testify may have been based, at least in part, on his concern that revealing the identity of those holding a stake in the $860,000 transported by him in 1980, or in the other assets he allegedly possessed, might ultimately lead to criminal forfeiture of the assets, thereby precluding Dickinson from ever having access to the money. Consequently, the court concluded that while "[o]rdinarily imprisonment is a more coercive sanction than a fine," in this case, imposition of a fine on Dickinson might be more coercive than incarceration. Given the circumstances herein, we find the district court's conclusion to be a proper exercise of the court's discretion.

■ Next, Dickinson contends that imposition of the fine violates due process. According to him, he is without any funds. He therefore maintains that the fine constitutes a future punishment for a present contempt, or a punitive, rather than a coercive sanction. We find this argument unpersuasive. If Dickinson were truly without assets, he could have filed an affidavit of poverty, but he has not done so; if he presently does have access to resources, then a fine may well have a coercive effect. As the government states, even if he is without assets and is unable to render payment out of current funds, the pressure of having to pay in the future would be presently felt and could have a coercive effect.

Finally, Dickinson argues that this Court's holding in *Soobzokov v. CBS, Inc.*, 642 F.2d 28 (2d Cir.1981), precludes the imposition of a coercive fine following the release of a contemnor from confinement. In *Soobzokov*, upon appellant's continued refusal to answer certain questions asked of him during a deposition, the district court, on March 24, 1980, held appellant in contempt and ordered him incarcerated. Eleven days later, on April 4, 1980, the court ordered appellant's release, finding that his confinement "[would] not achieve the purpose for which it was intended." *Id.* at 30. In place of the confinement, however, the court ordered appellant to pay a fine for each day that he continued to refuse to answer the questions. While recognizing that the district court has wide discretion in fashioning a remedy for civil contempt, *id.* at 31, this Court held that the district court's discretion is "not unlimited," *id.*, and that once the court "determin[ed] that imprisonment, the harshest sanction ..., would not work, [it was improper for the court to] impose[ ] the 'less Draconian' measure of a continuing daily fine." *Id.*

Contrary to Dickinson's contention, it is our view that *Soobzokov* does not stand for the general proposition that a fine may never be imposed on a contemnor after the district court has determined that incarceration will not have the desired effect.

Rather, this Court's ruling in *Soobzokov* merely states that, under the "peculiar facts of [that] case," *id.* at 31, the district court erred in concluding that a fine would be more coercive than imprisonment.

The situation herein is distinguishable from that in *Soobzokov*. Whereas the district court in *Soobzokov* did not enunciate any reasons to support its conclusion, the district court herein articulated a rational basis for its finding that a fine would be more coercive than incarceration. Furthermore, Dickinson, unlike the contemnor in *Soobzokov*, was already in prison. Therefore, while the additional term of incarceration brought about by Dickinson's commitment to custody under the contempt order would logically have some present coercive effect, the actual coercive effect would not be particularly strong until the point at which the original sentence would have otherwise expired. In *Soobzokov*, on the other hand, the contemnor was faced with a choice of immediate incarceration under the contempt order or none at all. Moreover, imposition of a $1,500 daily fine on the facts of this case as discussed above is likely to have a greater coercive effect than the $50 daily fine imposed in *Soobzokov*.

We note this Court's statement in *Simkin*, 715 F.2d at 38, concerning the coercive effect of a civil contempt sanction, that "a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion, and as to the merits of his conclusion."

For the foregoing reasons, we find that the district court did not abuse its discretion in concluding that a monetary sanction would be more coercive than incarceration. We therefore affirm the decision of the district court.

Affirmed.