In re GRAND JURY WITNESS.

UNITED STATES of America, Appellee,

v.

GRAND JURY WITNESS, Appellant.

No. 477, Docket 87–6235.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1987.
Decided Dec. 16, 1987.

Stephen D. Miller, Los Angeles, Cal., for appellant.

Charles G. LaBella, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., John F. Savarese, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Rodolfo T. Arambulo appeals from an amended civil contempt order entered against him by the United States District Court for the Southern District of New York (Walker, J.) on October 1, 1987 upon his refusal to appear before a grand jury. Underlying this appeal is the fact that Arambulo has fled the country, but he invokes the court's processes to challenge the adjudication holding him in civil contempt. To fight and to flee at the same time is as difficult to accomplish successfully in law as in life.

## BACKGROUND

The grand jury is investigating allegations that various individuals associated with Ferdinand E. Marcos, former President of the Republic of the Philippines, conducted and participated in a racketeering enterprise in violation of 18 U.S.C. § 1962, including embezzling substantial amounts of United States foreign aid to the Philippines, as well as funds of the Philippine government, in order to purchase commercial real estate in New York City. Specifically being investigated are various wire transfers of funds through the California Overseas Bank (Overseas Bank), a commercial bank based in Los Angeles, through the use of fictitious accounts. In that connection, the activities of Roberto Benedicto, Chairman of the Board of Directors, and Arambulo, a high-level officer and also a member of the Board of the Overseas Bank, in the alleged creation of fictitious accounts and transfer of funds are being

looked into. Arambulo is a citizen of the Philippines, but until recently was present in the United States as a nonresident alien.

On March 25, 1987 a grand jury subpoena was issued in the Southern District of New York directed to Arambulo, then a resident of Los Angeles, and served on his counsel, Wayne Smith, Esq. It required Arambulo to appear in New York and produce certain documents on April 14, 1987. Before the subpoena was served, Assistant United States Attorney Charles G. LaBella, who was responsible for assisting the investigation, discussed with Mr. Smith the timing of Arambulo's appearance and agreed that if Arambulo intended to assert his Fifth Amendment privilege he need not travel from California, but should indicate such intention by letter, which the AUSA agreed to present to the grand jury. During this conversation attorney Smith was also advised that his representation of Roberto Benedicto might present a conflict of interest. Smith asked for time to consider this and other matters raised in connection with Arambulo's appearance. These understandings were confirmed in a letter sent by Mr. LaBella to Mr. Smith with the March 25th subpoena. Shortly thereafter Mr. Smith advised the government that he would no longer represent Arambulo due to the conflict raised by his representation of Benedicto.

Later, Stephen D. Miller, Esq., Arambulo's present counsel, contacted Mr. LaBella by telephone and requested an adjournment without date in order for him to meet with his client to become familiar with the nature of the investigation and to explore his client's potential criminal exposure. The government agreed to the adjournment and scheduled a meeting on May 5, 1987 in New York City. At that meeting the AUSA outlined the charges upon which it believed Arambulo could provide testimony, and discussed the possibility of Arambulo becoming a government witness following a guilty plea to certain charges. Attorney Miller agreed to discuss these matters with his client.

On June 22, 1987 Mr. LaBella telephoned defense counsel and informed him that, based upon recent developments in the investigation, the government would seek an immunity order for Arambulo. Mr. Miller responded that this decision placed his client in a very difficult position because of the individuals against whom he would be forced to testify, and he requested a meeting in New York to discuss alternatives to Arambulo's appearance before the grand jury.

At a New York City meeting on July 15, 1987, Smith proposed certain alternatives to Arambulo's appearance, including that if Arambulo provided evidence against the targets of the investigation the government would promise not to call him either as a witness before the grand jury or at any subsequent trial. After the AUSA rejected this proposal, Miller informed the government for the first time that Arambulo was no longer in the United States. On August 21, Miller advised LaBella that he believed the March 25 grand jury subpoena had been withdrawn by the government.

### PROCEEDINGS BELOW

The AUSA promptly advised defense counsel that Arambulo should appear before the grand jury on September 3, 1987 and, when he failed to appear on that date, the government requested and obtained an order from Judge Walker, wired to Miller on September 4, directing Arambulo to appear on September 8, 1987. When Arambulo failed to appear on September 8, Judge Walker signed an order directing Arambulo to show cause why he should not be held in contempt.

A hearing was held on the show cause order on September 23, 1987 with Arambulo—who was, and apparently remains, outside of the United States—absent. Attorney Miller argued that because it was clear, based upon the May 5th meeting, "that Arambulo would assert his Fifth Amendment privilege and that the government did not intend to provide him with immunity," the grand jury subpoena had been implicitly withdrawn by the government.

At the conclusion of the hearing, Judge Walker rejected this argument and found

that: (1) Arambulo's former counsel Smith had been authorized to accept service and, therefore, the order directing Arambulo to appear before the grand jury had been properly served; (2) Arambulo had not been excused from his obligation to appear before the grand jury, and was still under a continuing duty to appear; and (3) Arambulo willfully failed to appear in violation of the order requiring him to do so. Based upon these findings, the district court ruled that Arambulo lacked just cause for his refusal to appear and accordingly held him in civil contempt pursuant to 28 U.S.C. § 1826(a). The district court imposed a $50,000 fine as "an order ... for a past transgression" and an additional $5,000 for each day of continued absence. Arambulo and his representatives were also enjoined from disposing of any of his assets within the United States. On September 29, 1987 we stayed enforcement of the monetary provisions of the order and expedited this appeal. The parties stipulated to a partial remand of the order, and on October 1, 1987, the trial court entered an amended order. Under the amended order, coercive sanctions of $50,000 were imposed if Arambulo failed to appear on or before October 6, 1987, and for each day thereafter that he failed to appear an additional $5,000 fine was levied.

### DISCUSSION

Three issues are raised in Arambulo's behalf. First, he contends that the procedures the district court followed in holding him in contempt denied him a fair hearing and due process of law. Second, he claims that the contempt adjudication was a substantive error of law because the subpoena he allegedly failed to obey had been withdrawn by the government. Third, he argues that the fines levied against him were imposed arbitrarily and constitute an abuse of discretion.

### A. *Procedures Followed at Contempt Hearing*

The statutory authority for an adjudication of civil contempt is set forth in 28 U.S.C. § 1826(a), which states

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

　(1) the court proceeding, or

　(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

28 U.S.C. § 1826(a) (1982). Fed.R.Crim.P. 17(g) also makes a failure to obey a subpoena without adequate excuse a contempt of court. Upon an adjudication of civil contempt, § 1826(a) authorizes the contemnor's confinement. Fines are an additional or alternative sanction that may be imposed. *See, e.g., Matter of Dickinson*, 763 F.2d 84, 88 (2d Cir.1985); *Matter of Grand Jury Impaneled January 21, 1975*, 529 F.2d 543, 550–51 (3d Cir.) (reviewing legislative history), *cert. denied sub nom. Freedman v. United States*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976).

An adjudication of civil contempt is coercive—to compel obedience to a lawful court order—criminal contempt is imposed to punish the contemnor for an offense against the public and to vindicate the authority of the court. *United States v. Petito*, 671 F.2d 68, 72 (2d Cir.), *cert. denied*, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982). Refusal to obey a court order may subject a person to both civil and criminal contempt for the same acts. *Yates v. United States*, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957). At issue in the instant matter is an adjudication for civil—not criminal—contempt, and the imposition of sanctions—not a summary order

of confinement—for appellant's failure to obey a subpoena.

■ Judicial sanctions following an order of civil contempt may be employed both to compel compliance with the court's order, as here, and as a remedial measure to compensate a civil complainant. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 448–49, 31 S.Ct. 492, 500–01, 55 L.Ed. 797 (1911). Where the purpose of civil contempt is compliance, the district court must consider several factors, which will be discussed shortly.

■ Appellant first argues that the denial of an open hearing deprived him of due process. A witness charged with civil contempt, absent the imminent threat of confinement, is not entitled to "every right available to a defendant in a criminal contempt proceeding." *In re Kitchen*, 706 F.2d 1266, 1271 (2d Cir.1983). While we have been guided by the Ninth Circuit's lead in *United States v. Alter*, 482 F.2d 1016 (9th Cir.1973), "on the procedures to be followed before imprisoning a recalcitrant witness under § 1826(a)," *Kitchen*, 706 F.2d at 1271, we are not faced with that concern on this appeal.

Hence, all of the procedural safeguards we have previously recognized in the context of possible imprisonment, *e.g., In re Sadin*, 509 F.2d 1252, 1255 (2d Cir.1975) (witness entitled to uninhibited adversary hearing); *In re Di Bella*, 518 F.2d 955, 959 (2d Cir.1975) (right to counsel); *In re Rosahn*, 671 F.2d 690, 696–97 (2d Cir.1982) (open public hearing required where civil contemnor faces confinement), generally are not required here. The reason is simply that those constitutional due process protections afforded a contemnor facing prison are not perceived to be necessary to the same degree to a civil contemnor not facing that prospect. *See In re Rosahn*, 671 F.2d at 697. Further, Arambulo has chosen not to appear, and has absented himself from the United States without providing, through counsel or otherwise, an explanation. We decline to extend an even greater degree of protection to a contemnor who has voluntarily chosen not to appear.

The facts here reveal that Arambulo had at all times since the issuance of the subpoena for his appearance before the grand jury been represented by competent counsel. Moreover, there is a strong likelihood that were this civil contempt proceeding conducted at a public hearing sensitive and secret grand jury investigative information would be revealed to the prejudice of the public interest. Under these circumstances, the district court's decision to close the hearing did not deprive the absent Arambulo of his right to due process of law.

■ Appellant next asserts that during the contempt hearing the government presented the district court with a sealed *ex parte* affidavit, and adjourned to the robing room to discuss it outside the presence of Arambulo's counsel, without affording defense counsel an opportunity to examine the affidavit. Arambulo argues that this submission also denied him his right to a fair hearing. The government responds that the district court expressly found that the papers submitted had no direct bearing on the contempt proceeding. We have read the papers submitted regarding the on-the-record (though sealed) colloquy between Judge Walker and AUSA LaBella and are satisfied that the actions by the government did not deprive appellant of a fair hearing.

In sum, the procedures followed by the district court in adjudicating appellant in civil contempt did not deprive him either of due process of the law or of a fair hearing.

B. *Withdrawal of Subpoena*

The March 25, 1987 grand jury subpoena was served on Arambulo through his counsel. It contained the customary language commanding him to "testify and give evidence ... and not to depart the Court without leave thereof, or of the United States Attorney ... [a]nd for failure to attend and produce the said documents you will be deemed guilty of contempt of Court and liable to the penalties of law." Appellant urges that subsequent actions of the AUSA had the effect of impliedly withdrawing or extinguishing this subpoena.

Alternatively, Arambulo contends that he fully satisfied his obligations under the subpoena when his attorney advised that if forced to appear he intended to invoke his Fifth Amendment privilege. We are not persuaded by either argument.

■ The district court held that once the grand jury subpoena is served it remains in effect and may not be withdrawn by implication. We agree. For over half a century it has been established law that unless a subpoena is vacated upon proper application, the person whom it directs to appear must "respond to the subpoena and [must] remain in attendance until excused by the court or by the Government's representatives." *Blackmer v. United States*, 284 U.S. 421, 442–43, 52 S.Ct. 252, 256–57, 76 L.Ed.2d 375 (1932) (witness failing to appear on adjourned date of subpoena held in contempt over argument that he was only obliged to appear on the date specified on the face of the subpoena).

■ The various telephone calls and meetings following the issuance of the subpoena did not mark its withdrawal. It remained an outstanding, viable, continuing order that Arambulo had a duty to obey. Nor did the adjournments that were sought for defense counsel's benefit or Arambulo's convenience vitiate the subpoena. In *United States v. Snyder*, 413 F.2d 288 (9th Cir.), *cert. denied*, 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 (1969), the government had an arrangement under which the subpoenaed witness agreed to be "on call" to testify. This arrangement was held to have no effect on the continuing vitality of the subpoena, and could not be considered an agreement to replace it. *Id.* at 288–89. Adjournments from a grand jury appearance cannot later be viewed as an "excuse" by the government's representatives from the subpoena's commands. If this were the rule, adjournments would never be granted. Further, Arambulo, who sought these adjournments, may not now complain that the commands appearing on the face of the subpoena were not insisted upon. *United States v. Germann*, 370 F.2d 1019, 1022 (2d Cir.), *vacated because of petition-er's death*, 389 U.S. 329, 88 S.Ct. 503, 19 L.Ed.2d 559 (1967).

■ Arambulo's alternative argument requires little comment. It is sufficient merely to note that the discussion regarding Arambulo not appearing before a grand jury in New York was conditioned on his furnishing a letter stating his intention to invoke the Fifth Amendment. He never fulfilled the condition. Moreover, even if he had written such a letter it would not alter his continuing duty to obey the March 25th subpoena, absent being excused by the district court or the AUSA. *See Blackmer*, 284 U.S. at 443, 52 S.Ct. at 257; *Snyder*, 413 F.2d at 289; *Germann*, 370 F.2d at 1022. There is no evidence that such an excuse was ever given, and we do not construe these conversations, telephone calls and adjournments as an implied excuse from that obligation. Hence, appellant's arguments on the implied withdrawal of the subpoena and discharge of his obligation under it must fail.

## C. *Fines*

Appellant objects to the monetary sanctions imposed, claiming that the district court failed to exercise its discretion properly when it imposed such substantial fines for his failure to appear. Arambulo's argument is focused principally on the $50,000 originally imposed for his "past transgression" in failing to appear before the grand jury on September 8, 1987. Of course, this fine was punitive, as the panel that expedited this appeal pointed out, and was not properly imposed in a civil contempt proceeding. An amended order was subsequently entered by the trial court that made the $50,000 fine conditional on appellant's failure to appear on or before October 6, 1987. Arambulo asserts that this too is an inappropriate coercive fine because, he argues, before signing the amended order the district court failed to weigh the required interests.

■ The policy underlying civil contempt under the statute is the same whether confinement is ordered or fines are imposed. Section 1826(a) provides that the period of confinement for civil contempt

terminates when the grand jury is discharged. The contemnor must be released at that time because the possibility of his compliance has ended. *Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). It follows that for the same reason when the civil contempt order imposes a fine, the contemnor's financial resources must be weighed in order to decide whether the sanctions appropriately compel obedience to the order. In *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court set forth what a district court must consider when imposing civil contempt sanctions for the purpose of making a contemnor comply. It should examine (1) the character and magnitude of the harm threatened by continued contempt, (2) the probable effectiveness of the proposed sanction, and (3) the financial consequence of that sanction upon the contemnor. *Id.* at 304, 67 S.Ct. at 701; *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

Before holding Arambulo in civil contempt, Judge Walker heard oral argument and reviewed the submissions of the government and defense counsel. The argument and papers demonstrated the important part Arambulo would play as a witness in the grand jury's continuing investigation into the alleged embezzlement of a substantial amount of public funds. They also revealed that without appellant's testimony there is a risk that the investigation would be jeopardized.

■ Arambulo's counsel claims, nonetheless, that there was no concrete information before the district court concerning Arambulo's finances and the burdens such fines would have on him. Such an assertion is somewhat disingenuous. The government conceded it had little information on Arambulo's financial situation. The only evidence that appears in the record is that Arambulo was a highly placed official in the Overseas Bank and a member of its Board of Directors. More important is the fact that Arambulo's counsel was present at the hearing and could have presented evidence regarding any unfair burden caused by the fine. Instead, defense counsel chose to remain silent. His failure to present any evidence on the record may not be charged either against the government or result in a holding that the district court abused its discretion in imposing the sanction.

■ Moreover, the factors noted in *United Mine Workers* are only guides to be used when and where appropriate. The imposition of coercive sanctions by way of fines is generally an area in which appellate courts must rely heavily on the informed exercise of the district court's discretion. Judge Walker's order appears reasonable under the circumstances. *See Perfect Fit Indus.,* 673 F.2d at 57; *International Business Machs. Corp. v. United States,* 493 F.2d 112, 116–17 (2d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

### CONCLUSION

Accordingly, for the reasons stated the civil contempt order appealed from is affirmed.