In the Matter of Proceedings Before the FEDERAL GRAND JURY FEBRUARY 1987 TERM (Barry GRIFFIN, a witness).

Misc. No. 86–0116–P.

United States District Court,
D. Maine.

Jan. 13, 1988.

Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., for petitioner.

Daniel W. Bates, Portland, Me., for respondent.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER

This matter comes before the Court on Barry Griffin's Motion for Discharge from his current confinement for civil contempt, imposed after he refused to answer questions before the grand jury. For the reasons outlined below, the motion is denied.

### Facts

In February 1986, Griffin was incarcerated at the federal prison in Sandstone, Minnesota, while serving a sixteen-year sentence for conspiracy with intent to distribute an amount of marijuana in excess of 1,000 pounds, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(6). Pursuant to a writ of *habeas corpus ad testificandum*, Griffin was returned to Maine to appear before the grand jury as a material witness. On February 24, Griffin appeared before the grand jury but refused to answer several questions, asserting his fifth amendment privilege against self-incrimination. Griffin was then notified that he had been granted use and derivative-use immunity for the testimony and information given, and that this Court had ordered him to testify. The order was read to Griffin, he had the opportunity to read it himself, and he conferred with his counsel about it. Nevertheless, he again refused to testify.

At a hearing on the following morning, this Court, per Gignoux, S.D.J., ordered Griffin to return to the grand jury and to answer any questions asked of him. Upon his return to the grand jury, Griffin again refused to answer the questions. Judge Gignoux held another hearing later that morning, found that Griffin's refusal to comply with the order was without just cause, and ordered that Griffin be confined until he is willing to testify. Pursuant to

28 U.S.C. § 1826,[1] the period of confinement is to continue for the life of the term of the grand jury currently sitting in Portland, but in no event shall exceed eighteen months.

Griffin subsequently filed this Motion for Discharge, arguing that no amount of incarceration will cause him to answer the questions put to him by the grand jury, and that his diabetic condition renders his incarceration "exceedingly more punitive than for those without such an affliction." Memorandum in Support of Motion for Discharge at 2. Griffin has waived oral argument and a factual hearing on this matter.

### Discussion

It is well established that "courts have an inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed. 2d 622 (1966). Section 1826(a) codified the practice governing the imposition of civil contempt for a refusal to comply with a court order to testify or produce documents. *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 425–26 (3d Cir. 1979). In order to coerce compliance with the Court's order, confinement can extend for the life of the term of the grand jury, including extensions, but cannot exceed eighteen months. Thus, the statute balances two competing values: to preserve the efficacy of the civil contempt power as an instrumentality for investigating crime, and to ensure that the civil contempt power is not abused by employing it to *punish* an intractable witness who will not be coerced by further confinement. *Id.* at 427.

■ A civil contempt sanction is a coercive device; it is imposed for the sole purpose of securing compliance with a court order. *Shillitani*, 384 U.S. at 370, 86 S.Ct. at 1535. When continued confinement loses its coercive characteristics, the confinement becomes punitive in nature. *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir. 1981). Since criminal penalties may not be imposed in civil contempt proceedings, the contemnor must be released when the incarceration has lost its coercive force. *In re Grand Jury Investigation (Braun)*, 600 F.2d at 423–24. Courts recognize that there is a narrow line between incarceration as coercion to induce compliance with a court order and incarceration as punishment for refusal to obey a court order. *In re Pantojas*, 639 F.2d 822, 825 (1st Cir. 1980).

Courts generally agree that "in the absence of unusual circumstances, a reviewing court should be reluctant to conclude, as a matter of due process, that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress." *Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983); *Matter of Crededio*, 759 F.2d 589, 591 (7th Cir.1985); *In re Grand Jury Investigation (Braun)*, 600 F.2d at 427. Yet that does not end a court's inquiry, since "[t]here must be an individualized decision, rather than application of a policy that the maximum eighteen month term must be served by all recalcitrant witnesses." *Simkin*, 715 F.2d at 38. The district court retains broad discretion to determine whether a civil contempt sanction has lost its coercive effect upon a particular contemnor at some point short of eighteen months. *Id.* at 37. *See also Sanchez v. United States*, 725 F.2d 29, 31 (2d Cir.1984) (Congress specified the maximum period that may be found to be coercive; nevertheless, the court must determine whether the confinement of any particular

---

1. Section 1826(a) provides, in pertinent part: Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information ... the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
   1. the court proceeding, or
   2. the term of the grand jury, including extensions,
   before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

contemnor has ceased to be coercive at some point within that maximum period).

■ The contemnor properly bears the burden of demonstrating that there is no "realistic possibility" that continued confinement might cause the contemnor to testify. *Simkin*, 715 F.2d at 37. *Cf. In re Grand Jury Investigation (Braun)*, 600 F.2d at 425 (contemnor bears the burden of demonstrating that "there is no 'substantial likelihood' that continued confinement would accomplish its coercive purpose"). "As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue." *Simkin*, 715 F.2d at 37.

■ Griffin has failed to demonstrate that there is no realistic possibility that continued confinement might cause him to testify. He has offered insufficient evidence in support of his motion; the only evidence that he has offered is a one-page affidavit containing nothing but conclusory assertions. He waived a factual hearing. In short, Griffin has provided this Court with absolutely no concrete facts upon which the Court could possibly find that he has met his burden. With regard to his conclusory assertions, the Court will address each in turn.

Griffin asserts that there is no possibility he will testify before the grand jury, and that no further amount of incarceration will coerce him to testify. However, a court need not accept as decisive a contemnor's avowed intention never to testify. *Id.*

> The contemnor may conscientiously believe at the time he testifies that incarceration will not coerce him into compliance, but the issue is not whether *the contemnor* believes there is no realistic possibility that continued confinement might cause him to testify; rather, it is whether *the district judge* believes, based on all the circumstances pertinent to that contemnor, that no such realistic possibility exists.

*Matter of Parrish*, 782 F.2d 325, 327–28 (2d Cir.1986) (emphasis in original). In the present case, there exists a realistic possibility, in the view of the Court, that contin-

ued confinement may yet have a coercive effect upon Griffin sufficient to cause him to relent from the obstinate course he has chosen to follow. Griffin has completed little over one-half of the maximum incarceration period. The Court is mindful that "incarceration of intransigent witnesses for civil contempt is premised on the notion that the desire for freedom, and concomitantly the willingness to testify, increases with the time spent in prison." *In re Grand Jury Investigation (Braun)*, 600 F.2d at 428. For each day that Griffin refuses to testify, he extends his prison term and delays his reunion with his family, which he asserts to be of great importance to him. The continuing incarceration will thus have an increasingly persuasive effect on Griffin. Griffin's realization that the Court is not inclined to relent is also likely to cause him to reevaluate his course and decide to end this wasteful hiatus to his own best interests. Thus, despite his bald assertion to the contrary, Griffin has not met his burden of proof on this point.

In his supporting memorandum, Griffin argues that because he is a diabetic, incarceration for him is more punitive than for those without such an affliction, citing *Matter of Dickinson*, 763 F.2d 84 (2d Cir. 1985). Griffin's argument lacks merit. First, the question before the Court is not whether incarceration is more punitive for one person than it is for another person. The question is whether sanctions have lost their coercive powers and have become essentially punitive. *Matter of Crededio*, 759 F.2d at 591. As stated above, the Court finds that the sanctions imposed on Griffin are not, as of this time, essentially punitive. Moreover, Griffin's reliance on *Dickinson* is misplaced. The *Dickinson* court considered several factors, including the witness' health, the length of the witness' sentence for a narcotics violation, the extent of the remaining term of the grand jury, and his determination not to feel coerced by additional incarceration, and imposed a daily fine of $1,500 in lieu of a commitment to custody. 763 F.2d at 87. The court found that the monetary sanction had a greater coercive effect upon the wit-

ness than incarceration. *Id.* at 88. Such a sanction in the present case would be less coercive and would place an unfair economic burden upon Griffin's dependent family.

Finally, Griffin cites "the ongoing threat to himself and his family" as a rationale for his refusal to testify.[2] Memorandum in Support of Motion for Discharge at 1–2. Nevertheless, an asserted threat against a witness or a witness's family is not legal justification for refusal to testify. *United States v. Dien*, 598 F.2d 743, 745 (2d Cir. 1978) (such a rule "would only benefit those who persistently refuse to cooperate despite immunity orders and in effect would emasculate section 1826.").

In conclusion, the Court finds that Griffin has failed to carry his burden of demonstrating that there is no realistic possibility that continued confinement will cause him to testify. The coercive action might yet produce its intended result.

Accordingly, Griffin's Motion for Discharge is hereby DENIED.

So ORDERED.

---

**2.** At the hearing on February 25, 1987, Judge Gignoux told the witness that the government could take steps to protect his wife and family. The witness said he did not know who made the threats, and the Assistant United States Attorney represented that the witness had refused to disclose the nature of the threats to the United States. Transcript of Hearing at 35–38.