■ ROBERT F. MALERBA et al., Respondents, v HARRY L. WARREN et al., Appellants. (Action No. 1.) TOWN OF EAST HAMPTON, Respondent, v HARRY L. WARREN et al., Appellants. (Action No. 2.) ROBERT F. MALERBA et al., Respondents, v JULIE C. WARREN et al., Appellants, et al., Defendant. (Action No. 3.) — In three consolidated actions to recover damages and for injunctive relief, for, *inter alia,* trespass to land, violation of the Code of the Town of East Hampton and threatened violation of an implied easement, the appeal is from a judgment of the Supreme Court, Suffolk County (Murov, J.), dated May 29, 1981, which, after a joint nonjury trial of the actions, held in favor of the plaintiffs against the appellants. Judgment modified, on the law and the facts, by deleting the fourth decretal paragraph thereof, which granted plaintiffs Robert F. Malerba and Mary Shelia Malerba the principal sum of $38,000 for lost rental income. As so modified, judgment affirmed, without costs or disbursements. The trial evidence amply supports the determination of the trial court that appellants' placement of a cottage on property referred to as "lot 3" near the boundary line of property owned by plaintiffs Robert F. Malerba and Mary Shelia Malerba and referred to as "lot 2", constituted, *inter alia,* a trespass to the Malerbas' land, and a violation of the Code of the Town of East Hampton. Compensatory and punitive damages were properly awarded to the Malerbas for the cost of rehabilitating their property, owing to defendants' reckless disregard of the Malerbas' rights (see *MacKennan v Bern Realty Co.,* 30 AD2d 679). However, the award of $38,000 for lost rental income was not supported by the evidence. This sum represented the total alleged rental value of lot 2 for the summers of 1979 and 1980. The Malerbas' witness, real estate broker Roger Atwood, testified that he rented that property to a renowned actor for the summers of 1976 and 1978, but was unable to rent the property for the summers of 1979 and 1980. He testified that he showed the property to several potential tenants, but to no avail. In his opinion, he was unable to find a tenant for the property because the erection of the cottage in close proximity thereto destroyed the "getting-away-from-it-all" atmosphere. The potential tenants were not identified, however, nor did Mr. Atwood testify that the potential tenants expressed their reasons for failing to rent the property. In any event, Mr. Atwood's testimony that the Malerbas could not rent the property conflicted with the testimony of another of their own witnesses, real estate broker Ernest Clark. According to Mr. Clark, the erection of the cottage depreciated the rental value of the Malerbas' property by at most 20%. Mr. Clark based this estimate on allegedly comparable rental properties, but he did not identify those alleged comparables. Thus, it is impossible to evaluate the accuracy of his estimate. Consequently, the award for lost rental income must be vacated in its entirety, owing to the inadequacy of the proof. With respect to the alleged implied easement concerning a utility pole on lot 3, the trial evidence established that the pole was the source of electric power for lot 2. Clearly that conduit was "necessary to the reasonable use" of lot 2 (see *Ragona v Di Maggio,* 42 Misc 2d 1042, 1044). When the pole was erected in 1974, Mary Kim Warren was owner of record of lot 3, and Nancy Lee Warren was owner of record of lot 2. However, it is clear from the record that they held title in name only, and that their parents Harry Lee Warren and Jean D. Warren had dominion and control over both lots for all practical purposes. Harry Lee Warren and his wife purchased both lots in 1965 as part of a larger parcel. Thereafter, when Mr. and Mrs. Warren subdivided the property into four lots, and conveyed each of those lots to one of their daughters, they reserved full use of the property for whatever purposes they deemed fit. Harry Lee Warren, and not his daughter, signed the agreement with the Long Island Lighting Company in 1974 for the erection of the utility pole on lot 3, to service

lot 2. Further, Harry Lee Warren testified at the trial that he moved the aforementioned cottage from lot 1 to lot 4 and then, after he conveyed lot 2 to the Malerbas, removed the cottage to lot 3. Therefore, Mr. and Mrs. Warren continued to treat all four lots as their own until lot 2 was conveyed to the Malerbas. Thus, there is sufficient evidence in the record that lots 2 and 3 were in unitary ownership when the pole was erected in 1974, and an implied easement in favor of lot 2 was established (see *United States v O'Connell,* 496 F2d 1329). We have considered appellants' remaining contentions and find them to be without merit. Brown, J. P., Niehoff, Rubin and Boyers, JJ., concur. [108 Misc 2d 785.]