NEW YORK STATE NATIONAL ORGA-
NIZATION FOR WOMEN; New York
City Chapter of the National Organiza-
tion for Women; National Organiza-
tion for Women; Religious Coalition
for Abortion Rights–New York Metro-
politan Area; New York State National
Abortion Rights Action League, Inc.;
Planned Parenthood of New York City,
Inc.; Eastern Women's Center, Inc.;
Planned Parenthood Clinic (Bronx);
Planned Parenthood Clinic (Brooklyn);
Planned Parenthood Margaret Sanger
Clinic (Manhattan); Ob–Gyn Pavilion;
the Center for Reproductive and Sexual
Health; VIP Medical Associates; Bill
Baird Institute (Suffolk); Bill Baird In-
stitute (Nassau); Dr. Thomas J. Mullin;
Bill Baird; Reverend Beatrice Blair;
Rabbi Dennis Math; Reverend Donald
Morlan; and Pro–Choice Coalition,
Plaintiffs,

and

City of New York, Plaintiff–Intervenor,

v.

Randall TERRY; Operation Rescue; Re-
verend James P. Lisante; Thomas Her-
lihy; John Doe(s) and Jane Doe(s), the
last two being fictitious Names, the real
names of said defendants being pres-
ently unknown to plaintiffs, said ficti-
tious names being intended to designate
organizations or persons who are mem-
bers of defendant organizations, and
others acting in concert with any of the
defendants who are engaging in, or in-
tend to engage in, the conduct com-
plained of herein, Defendants.

No. 88 Civ. 3071 (RJW).

United States District Court,
S.D. New York.

Jan. 20, 1989.

See also, 697 F.Supp. 1324.

Center for Constitutional Rights (David Cole, Mary M. Gundrum, Rhonda Copelon, of counsel), Now Legal Defense and Education Fund, (Alison Wetherfield, Sarah Burns, of counsel), Rabinowitz, Boudin, Standard, Krinsky & Lieberman (Judith Levin, of counsel), New York City, for plaintiffs.

Corporation Counsel for the City of New York (Peter Zimroth, Lorna Goodman, Hilary Weisman, of counsel), New York City, for plaintiff-intervenor.

Michael E. Tierney, New York City, A. Lawrence Washburn, Albany, N.Y., The Rutherford Institute of Connecticut, Inc. (Joseph R. Secola, George J. Mercer, of counsel), Milford, Conn., for defendants.

## OPINION

ROBERT J. WARD, District Judge.

Defendants, a group committed to anti-abortion protests and individuals affiliated with the group, have moved, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss plaintiffs' amended complaint and plaintiff-intervenor's complaint. Plaintiffs, a coalition of women's organizations and abortion providers, have moved for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., and they seek a permanent injunction prohibiting defendants from blocking access to medical facilities where abortions are performed. Plaintiff-intervenor, the City of New York ("the City"), has joined plaintiffs in their application for injunctive relief.

For the reasons that follow, defendants' motion to dismiss is denied, and plaintiffs' motion for summary judgment is granted.

## BACKGROUND

Plaintiffs commenced this action in New York State Supreme Court on April 25, 1988, seeking injunctive and declaratory relief. Exhibit A, annexed to Petition for Removal, filed May 3, 1988 ("Plaintiffs' Complaint").[1] Defendants had organized

---

1. The plaintiffs in the instant action are: New York State National Organization for Women; New York City Chapter of the National Organization for Women; National Organization for

and publicized a week of protests called Operation Rescue to be carried out in the New York City area from April 30 until May 7, 1988.[2] According to the plan, protestors each day would converge on a facility at which abortions were performed in an effort to close down the facility. The target facility each day was not to be disclosed in advance.

By order to show cause plaintiffs sought to enjoin defendants, for the duration of the planned Operation Rescue, from obstructing access to any facility at which abortions were performed in New York City and the surrounding counties. Justice Cahn of the New York State Supreme Court, New York County, issued a first temporary restraining order on April 28, 1988. After hearing assurances from representatives of the New York City Police Department that the authorities would be able to ensure access to any protest site, Justice Cahn declined to include in this first restraining order any language specifically prohibiting the blocking of access to clinics.

It is undisputed that on May 2, 1988, Operation Rescue conducted a demonstration in front of a physician's office at 154 East 85th Street in Manhattan, where abortions are performed. Five hundred and three protestors sat on the sidewalk in front of the office for at least five hours, and the police arrested these 503 demonstrators for disorderly conduct in blocking ingress to and egress from the office. Statement of Stipulated Facts, filed May 4, 1988 ¶ 1.

Justice Cahn held another hearing on the afternoon of May 2, 1988, in view of defendants' conduct at the demonstration earlier that day. At the conclusion of the hearing, Justice Cahn issued a second, modified temporary restraining order. *Id.* ¶ 2. This second order included an express prohibition against the blocking of access to facilities where abortions are performed.[3]

Women; Religious Coalition for Abortion Rights (RCAR); New York State National Abortion Rights Action League, Inc.; Planned Parenthood of New York City, Inc.; Eastern Women's Center, Inc.; Planned Parenthood Clinic (Bronx); Planned Parenthood Clinic (Brooklyn); *Planned Parenthood Margaret Sanger Clinic* (Manhattan); Ob–Gyn Pavilion; Center for Reproductive and Sexual Health (CRASH); VIP Medical Associates; Bill Baird Institute (Suffolk); Bill Baird Institute (Nassau); Bill Baird, Director of the Bill Baird Institutes; Thomas J. Mullin, M.D., F.A.C.O.G., medical director of Eastern Women's Center; Rev. Beatrice Blair, chairperson of RCAR; Rabbi Dennis Math, Vice–President of RCAR; Rev. Donald Morlan, Treasurer of RCAR; and Pro–Choice Coalition.

Plaintiffs have brought this action on behalf of themselves and on behalf of a class of all family planning clinics and abortion providers and their staff and patients in New York City, Nassau, Suffolk, and Westchester Counties. To date, the Court has taken no action to certify the putative class.

For convenience and where the context permits, the Court will refer to plaintiffs, plaintiff-intervenor and the women on whose behalf they have brought this action, collectively, as "plaintiffs."

2. The defendants in this action are: Randall Terry; Operation Rescue; Rev. James P. Lisante; and Thomas Herlihy.

In addition, plaintiffs have named as defendants "John Does" and "Jane Does," intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with any of the defendants who are engaging in, or intend to engage in, the conduct complained of.

3. The terms of Justice Cahn's May 2 Order are as follows:

.…[I]t is hereby ORDERED that the defendants, the officers, directors, agents, and representatives of defendants, and all other persons whomsoever, acting in concert with them, and with notice of this order are:

1) enjoined and restrained in any manner or by any means from:

a) trespassing on, blocking, obstructing ingress into or egress from any facility at which abortions are performed in the City of New York, Nassau, Suffolk, or Westchester Counties from May 2, 1988 to May 7, 1988,

b) physically abusing or tortiously harassing persons entering, leaving, working at, or using any services at any facility at which abortions are performed in the City of New York, Nassau, Suffolk, or Westchester Counties, from May 2, 1988 to May 7, 1988. Provided, however, that sidewalk counseling, consisting of reasonably quiet conversation of a nonthreatening nature by not more than two people with each person they are seeking to counsel shall not be prohibited. Also provided that no one is required to accept or listen to sidewalk counseling and that if anyone who wants to, who is sought to be counseled wants to not have counseling, wants to leave, walk away, they shall have the absolute right to do that. In addition, provided that

Operation Rescue conducted a demonstration on the morning of May 3, 1988, in front of a clinic at 83–06 Queens Boulevard, Queens, New York. Defendant Terry was present at the demonstration in a leadership capacity and was personally served with Justice Cahn's order at approximately 9:00 a.m. The demonstration continued after Terry was served with the order. The police arrested several hundred demonstrators for blocking ingress to and egress from the clinic, and the sidewalk was cleared by approximately 11:45 a.m. *Id.* ¶¶ 3, 10.

On the afternoon of May 3, 1988, Justice Cahn conducted a further hearing on the matter, during the course of which defendants removed the action to this Court. This Court scheduled a hearing to be conducted in the late afternoon of the following day, May 4, 1988. Apparently, no demonstration was carried out on the morning of May 4.

After argument by the parties, this Court ruled on Wednesday evening, May 4, 1988, that it would adopt and continue Justice Cahn's May 2 order and would modify it by (1) adding coercive sanctions of $25,000 for each day that defendants violated the terms of the order; and (2) requiring defendants to notify the City in advance of the location of any demonstrations, and providing that if such notice was not provided, defendants would be liable for the City's excess costs incurred due to the lack of notice. *See* Transcript of Hearing, conducted May 4, 1988, at 61–62, 65–66, 72–73 ("the May 4 Order"). Defendant Terry received oral notice of this Court's action from his attorney on the evening of May 4, and the Court signed the May 4 Order the following morning. Second Statement of Stipulated Facts, filed July 19, 1988 ¶ 1.

On Thursday morning, May 5, 1988, Operation Rescue demonstrators sat on the sidewalk in front of the Women's Choice Clinic, where abortions are performed, at

17 W. John Street, Hicksville, Long Island. The demonstrators blocked ingress to and egress from the clinic for approximately three hours. *Id.* ¶ 3.

On Friday morning, May 6, 1988, "Operation Rescue" demonstrators returned to the same site where they had demonstrated on Monday, at 154 East 85th Street, Manhattan, blocking access to the office. *Id.* ¶ 4. Defendant Terry personally participated in physically blocking access to the abortion facility during the May 6 demonstration and was arrested. Third Statement of Stipulated Facts, filed July 26, 1988 ¶ 5. Approximately 320 Operation Rescue demonstrators were arrested at the May 6 demonstration. *Id.* ¶ 7.

At no time after he received notice of the May 4 Order did defendant Terry direct demonstrators to obey the Order, nor did he at any time alter his prior written instructions to Operation Rescue participants that their goal must be to block access to abortion facilities. At the May 6 demonstration, defendant Terry did communicate to demonstrators the terms of the Court's Order. *Id.* ¶ 6. The City did not receive advance notice of the location of the demonstrations on May 5 or May 6. Second Statement of Stipulated Facts, filed July 19, 1988 ¶ 5.

On May 31, 1988, plaintiffs filed a motion for civil contempt against all defendants, pursuant to 18 U.S.C. § 401 and Rule 70, Fed.R.Civ.P. On July 6, 1988, defendants filed a cross-motion to dismiss the complaint. In an Opinion dated October 27, 1988 ("the October 27 Opinion"), the Court adjudged defendants Operation Rescue and Randall Terry in civil contempt of the Court's Order for their activities during the May 5 and May 6 demonstrations. Defendants' cross-motion was denied. Accordingly, the Court entered on November 4, 1988 a judgment in the amount of $50,000 payable to the National Organization for Women; and on December 9, 1988 judgment

---

this right to sidewalk counseling as defined here shall not limit the right of the Police Department to maintain public order by reasonably necessary rules and regulations as they decide are necessary at each particular demonstration site.

And it is further ORDERED that nothing in this Order shall be construed to limit defendants' exercise of their legitimate First Amendment rights.

Exhibit A, annexed to Order to Show Cause, issued May 3, 1988.

was entered in the amount of $19,141 in favor of the City. Defendants have filed notices of appeal from both judgments.

In light of defendants' plan to conduct a National Day of Rescue at the end of October, *see* Exhibit B, annexed to Affirmation of Mary M. Gundrum, filed December 21, 1988 ("Gundrum Aff."), plaintiffs, on October 7, 1988, sought modification of the Court's prior injunction, to cover the dates October 28, 29 and 31, 1988. At the conclusion of an evidentiary hearing conducted October 25 and 27, 1988, the Court granted plaintiffs' motion and signed an order granting plaintiffs the modified preliminary relief they sought ("the October 27 Order"). Defendants' application to this Court and to the Court of Appeals for a stay pending appeal of the October 27 Order was denied.

Notwithstanding the issuance of the modified injunction and the denial of the requested stay, defendants conducted two demonstrations on the morning of October 29, 1988 within the geographic area covered by the October 27 Order. From at least 8:00 a.m. until about 12:15 p.m. on October 29, approximately 250 Operation Rescue demonstrators blocked ingress to and egress from the Women's Pavilion medical clinic on Ashford Avenue in Dobbs Ferry, New York. Exhibits A, H & I, annexed to Gundrum Aff. From at least 8:00 a.m. until about noon on October 29, approximately 130 Operation Rescue demonstrators blocked access to the Women's Pavilion clinic on Deer Park Avenue in Deer Park, Suffolk County, New York. Exhibits A & J, annexed to Gundrum Aff. Both clinics targeted on October 29 provide abortions and family planning counseling.

On October 26, 1988, in the midst of the evidentiary hearing on plaintiffs' application to modify the Court's injunctive order, defendants filed their second motion to dismiss. The motion has been adjourned repeatedly upon the consent of the parties.

Plaintiffs, on December 21, 1988, filed the instant motion for summary judgment and a permanent injunction upon receiving notice of blockades planned by Operation Rescue in the New York City Area from January 12 to 14, 1989. These blockades have been planned in express retaliation for this Court's October 27 Opinion. 697 F.Supp. 1324. *See* Exhibit A, annexed to Gundrum Aff. (Letter from Randall Terry (Nov. 16, 1988), urging participation in January blockades of "abortion mills" in New York City area in order to "face down" this Court). The briefing schedules for plaintiffs' summary judgment motion and defendants' pending motion to dismiss have been coordinated so that the Court may consider them together. On January 6, 1989, the Court heard oral argument on these motions.

In their motion to dismiss, defendants argue that plaintiffs and plaintiff-intervenor lack standing to pursue this action, and defendants challenge the sufficiency of the complaint with respect to each of the eight causes of action asserted therein. In their papers filed in opposition to plaintiffs' summary judgment motion, defendants argue that the complaint does not authorize the relief plaintiffs now seek, and that the appeals now pending in this case divest the Court of jurisdiction to entertain plaintiffs' motion for permanent relief.[4]

## DISCUSSION

Because resolution of the jurisdictional question raised by defendants depends in part upon an analysis of plaintiffs' complaint, the Court will discuss together defendants' arguments with respect to the inadequacies of the complaint and the jurisdictional consequences of their appeals. It will then address plaintiffs' standing and consider the merits of plaintiffs' causes of action. Finally, the Court will assess the propriety of injunctive relief.

A. *Jurisdiction of the District Court in Light of Defendants' Pending Appeals*

As set forth above, plaintiffs filed their original complaint in this action in state

---

**4.** In addition to the two contempt judgments against them, defendants have filed notices of appeal from the Court's order compelling Randall Terry's deposition, the order assessing costs and attorney's fees in a discovery dispute, and the October 27 Order.

court on April 25, 1988. In their complaint, plaintiffs expressly demand: (1) a declaratory judgment that defendants' activities violate plaintiffs' rights to obtain and provide abortions; and (2) a "preliminary and permanent injunction" prohibiting defendants from blocking access to clinics or harassing persons entering or leaving clinics "from April 30, 1988 to May 7, 1988, or the conclusion of a planned blockade called 'Operation Rescue,' whichever is later." [5] Inasmuch as plaintiffs, in their complaint, expressly seek a permanent injunction, defendants' assertion to the contrary is startling to the Court.[6] Moreover, in view of the undisputed facts setting forth a continuing pattern of blockades in and around New York City, the Court concludes that the activities planned for January, 1989 constitute an extension of prior activities begun in April, 1988. *See* Transcript of Hearing conducted January 6, 1989, at 27–28. Accordingly, there is no deficiency in the Complaint that would preclude the Court from ruling on plaintiffs' instant motion for summary judgment and a permanent injunction.

Defendants argue that plaintiffs have already been granted complete relief, and they characterize the Court's October 27 Opinion, 697 F.Supp. 1324, as a grant of summary judgment to plaintiffs. Defendants' Memorandum, filed January 4, 1989, at 6. Defendants assert that the Court's October 27 Opinion, 697 F.Supp. 1324, finally decided the merits of the controversy, and their appeals from the judgments entered pursuant to that Opinion therefore divest this Court of jurisdiction to consider the instant motion.

The Court is of the view that this argument rises or falls with defendants' argument regarding the scope of relief requested in the complaint. Defendants asserted when this Court issued its May 4 Order that plaintiffs had been granted complete relief, and that the May 4 Order was therefore properly construed as a final judgment. Transcript of Hearing conducted May 4, 1988, at 75. The May 4 Order was, to the contrary, only a preliminary order covering a short duration, in response to the immediate situation then before the Court. It did not grant the permanent relief requested by plaintiffs.[7]

It follows that the Court's October 27 Opinion, 697 F.Supp. 1324, cannot be construed as a final determination of the merits of the case. That decision determined only whether the terms of the May 4 Order had been violated and whether civil contempt sanctions were appropriate. The Court did address the merits of defendants' challenges to its May 4 Order, *see* October 27 Opinion, 697 F.Supp. at 1328–1330, and decided the issue of plaintiffs' and plaintiff-intervenor's standing, *id.* at 1336–38. A consideration of the propriety of the issuance of a temporary injunction, however,

---

5. Upon obtaining leave of the Court, plaintiffs served an amended complaint on defendants September 14, 1988. The purpose of the amendments to the complaint was to clarify the change in court from state court to federal district court following defendants' removal of the case, and to clarify defendant Randall Terry's status as a defendant both in his individual capacity and in his representative capacity as president of Operation Rescue, an unincorporated association based in New York State. The amended complaint made no changes to the "Wherefore" clause of the complaint.

6. Defendants, in their papers, baldly assert that a permanent injunction is "not requested in Plaintiffs' Complaint or Amended Complaint or in their October 7, 1988 motion for modification of injunctive relief." Defendants' Memorandum, filed January 4, 1989, at 7.
 Defendants do not challenge that the relief requested in plaintiff-intervenor's complaint au-thorizes plaintiff-intervenor to seek permanent injunctive relief.

7. Defendants' counsel, at the January 6, 1989 oral argument, explained that when he read the Complaint last April, he understood that the language seeking an injunction "from April 30, 1988 to May 7, 1988, or the conclusion of a planned blockade called 'Operation Rescue,' whichever is later," was properly construed as being limited by the specific dates set forth. Subsequent events have made clear, however, that the "planned blockade called 'Operation Rescue'" continues, authorizing this Court to consider plaintiffs' current application for permanent injunctive relief. If indeed defendants' activities had not continued beyond May 7, 1988, this case would be moot and the May 4 Order might properly be construed as having granted complete relief.

can in no way be construed as a final determination of the merits of a case. The portion of the October 27 Opinion, 697 F.Supp. 1324, discussing standing constituted a denial of defendants' motion to dismiss on that ground. It is axiomatic that the denial of a motion to dismiss is not an appealable order.

Since the filing of a notice of appeal divests the district court of jurisdiction only over those aspects of the case involved in the appeal, *see Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam), defendants' filing of a notice of appeal from the civil contempt judgments does not disable the Court from considering plaintiffs' application for final and permanent relief. Conceptually, the determination whether the May 4 Order was violated is entirely distinct from the question whether plaintiffs are entitled to a permanent injunction.

The contempt judgments are neither final orders under 28 U.S.C. § 1291, nor among the interlocutory orders from which appeal is permitted under 28 U.S.C. § 1292. If they are properly appealable at all,[8] it is only pursuant to the collateral order doctrine.

"[S]ince [under the collateral order doctrine] there is no pretense that the appeal is from an order that finally terminates the litigation, there is no reason to treat the appeal as transferring the entire litigation to the court of appeals. Instead, the district court should have the same power to proceed as it enjoys pending frankly interlocutory appeals under 28 U.S.C.A. § 1292(a) or § 1292(b)"

*Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 611 F.Supp. 237, 240 (S.D.N.Y.1985) (quoting 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3911 (1976), at 497).

It is well settled that an appeal from an interlocutory order granting or denying preliminary injunctive relief does not strip the district court of jurisdiction to hear the merits. *Thomas v. Board of Ed.*, 607 F.2d 1043, 1047 n. 7 (2d Cir.1979), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980). A fortiori, a judgment rendered in the enforcement of a preliminary injunction cannot operate to divest the district court of jurisdiction to reach the merits of the case. Accordingly, this Court retains jurisdiction over this case notwithstanding defendants' pending appeals.

Before proceeding to the merits, however, the Court will first address defendants' standing argument.

B. *Standing*

■ In their motion to dismiss, defendants renew their argument that plaintiffs lack standing to maintain this action. First, the Court reaffirms its earlier holdings on this issue. *See generally* October 27 Opinion, 697 F.Supp. 1324, 1337–38. As a matter of law, plaintiff health care facilities may sue on behalf of their patients as well as themselves. *Singleton v. Wulff*, 428 U.S. 106, 118, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976) ("it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision") (plurality opinion); *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1396 (6th Cir.1987) (clinic and its director had standing to assert rights of patients seeking abortions); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 865 n. 3 (8th Cir.1977) (clinic may sue on behalf of women patients seeking abortions); *Pilgrim Medical Group v. New Jersey State Bd. of Medical Examiners*, 613 F.Supp. 837, 848 (D.N.J.1985) (same). Plaintiff organiza-

---

**8.** Plaintiffs challenge whether the contempt judgments are appealable. Addendum A to Plaintiffs' Reply Memorandum, filed January 5, 1989. The filing of a notice of appeal from an unappealable order does not divest the district court of jurisdiction over any aspect of a case. *Leonhard v. United States*, 633 F.2d 599, 610 (2d

Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). The Court, though, need not decide this question, for it has jurisdiction to decide the instant motions whether or not the contempt judgments were properly appealed.

tions may sue on behalf of their members. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)). The City of New York may sue on behalf of its citizens. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 698 (7th Cir.1976) (applying to the issue of municipal standing the general rule on organizational standing).

■ The Court, in its October 27 Opinion, 697 F.Supp. 1324, reviewed plaintiffs' complaint and plaintiff-intervenor's complaint, concluding that the allegations contained therein were sufficient to confer standing. Plaintiffs had alleged that they—and the women on whose behalf they are entitled to sue—were facing a realistic and immediate danger of suffering an injury caused by defendants and redressable by the Court. October 27 Opinion, 697 F.Supp. at 1337–38. Ordinarily, when ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiffs. *E.g., Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206. However, in the present posture of the case, where defendants raise the standing issue in opposition to plaintiffs' summary judgment motion, plaintiffs must prove the allegations on which they are relying. *City of Hartford v. Towns of Glastonbury,* 561 F.2d 1032, 1051 (2d Cir.1976) (en banc), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 766, 54 L.Ed.2d 781 (1978). *Accord Glover River Org. v. United States Dep't of the Interior,* 675 F.2d 251, 254 n. 3 (10th Cir.1982); *NAACP, Boston Chapter v. Harris,* 607 F.2d 514, 526 (1st Cir.1979).

■ Defendants argue that since none of the named plaintiffs were targets of blockades conducted in May 1988 or October 1988, they cannot demonstrate the kind of injury required to establish their standing. "Plaintiffs clearly have not alleged or shown any actual injury to themselves." Defendants' Memorandum, filed October 26, 1988, at 4.

Defendants misunderstand the standing requirement. In view of the nature of the relief requested, plaintiffs' standing depends not on their present ability to demonstrate actual injury, but on their ability to show that when they filed the action, they in fact faced the concrete threat of injury they have alleged. When the complaint was filed, plaintiff facilities were potential targets of the planned demonstrations. Exhibit E, annexed to Gundrum Aff. There is no dispute that when defendants target a particular facility, they have been able to disrupt the facility and effectively shut it down. *E.g.,* Statement of Stipulated Facts, filed May 4, 1988 ¶ 1; Exhibit E, annexed to Gundrum Aff. These facts are sufficient to support plaintiffs' allegations that plaintiff facilities and their patients faced a concrete threat of injury when plaintiffs filed their complaint.[9] The threat to the City's interest in ensuring the health of its citizens was likewise sufficiently concrete to confer standing on intervenor-plaintiff. The Court will not require plaintiff organizations to supply the names of members who had appointments scheduled at New York area clinics for the week of April 30 to May 7, 1988. Furthermore, in view of defendants' pattern of activity and demonstrations planned by defendants from January 12 through January 14 in New York City, plaintiffs' claims can in no way be considered moot.[10]

9. The fact that no particular individual or clinic could know in advance whether she or it would be targeted is due solely to the secretive nature of the planned activities. *See* Defendants' 3(g) Statement, filed January 4, 1989 ¶ 6 (Operation Rescue demonstrations "normally announced in advance for a particular city or metropolitan area without disclosure of the particular abortion provider or clinic"). Defendants cannot use the uncertainty, created entirely by themselves, to their advantage to argue that no particular individual could in advance point to a certain threatened injury. The threat of injury was sufficiently concrete to confer standing on plaintiffs.

10. In *Roe v. Operation Rescue,* No. 88–5157, slip op. (E.D.Pa. Dec. 19, 1988) [1988 WL 137313], Judge Newcomer dismissed as plaintiffs an individual abortion provider, National Abortion Rights Action League and several clinics that were not the subject of blockades conducted around Philadelphia during the week of July 4, 1988. *Id.* at 5–7. To the extent that the Penn-

## C. *The Merits*

Plaintiffs assert eight causes of action in the complaint. To grant plaintiffs' motion for summary judgment, the Court need only find that plaintiffs have established their entitlement to relief on at least one cause of action on the basis of undisputed facts. To grant defendants' motion to dismiss, the Court must conclude that on the basis of the pleadings, none of plaintiffs' causes of action states a claim for relief under any set of facts. For convenience, the Court will consider both motions together.

A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–250, 106 S.Ct. 2505, 2509–2511, 91 L.Ed.2d 202 (1986)). While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983), "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and defenses, and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra,* 804 F.2d at 12. The motion then:

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Once the moving party has demonstrated the absence of any genuine issue of material fact, the non-moving party must establish " 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Rule 56(e), Fed. R.Civ.P.; emphasis supplied in *Matsushita* ).

The Court's role in deciding a motion to dismiss is more limited. It must accept as true the allegations in the complaint, *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), and construe them liberally in plaintiffs' favor, *Scheuer v.*

sylvania Court and this Court reach different results on the issue of standing, the cases are not inconsistent. The two courts have been presented with different sets of facts. *See, e.g.,* Exhibit E, annexed to Gundrum Aff. (Operation Rescue literature, explaining that "New York City is one of the largest abortion capitols [sic] in the world.... [and] the media hub of the free world").

Based on the allegations contained in plaintiffs' complaint and the facts before the Court, the Court has concluded that plaintiffs have established the requisite concrete threat of injury. The Court's conclusion has been borne out by subsequent events. Defendants have returned to the New York City area repeatedly, and have threatened to conduct further demonstrations in direct challenge to this Court's authority. Exhibit A, annexed to Gundrum Aff.; Exhibits 1 & 2, annexed to Plaintiffs' Notice of Filing, filed January 6, 1989.

*Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Rauch v. RCA Corp.,* 861 F.2d 29, 30 (2d Cir.1988). The complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote and citations omitted); *Rauch v. RCA Corp., supra,* at 30.

Plaintiffs, in their complaint, assert the following causes of action: (1) violation of civil rights guaranteed by N.Y.Civ.Rights Law § 40–c (McKinney Supp.1988) and N.Y.Exec.Law § 296 (McKinney 1982 & Supp.1988); (2) public nuisance; (3) tortious interference with business relations; (4) trespass; (5) intentional infliction of emotional harm; (6) tortious harassment of patients; (7) false imprisonment; and (8) violation of 42 U.S.C. § 1985(3). Plaintiff-intervenor asserts a single cause of action, public nuisance.

1. Plaintiffs' Claims under Section 1985(3)

Because plaintiffs' eighth cause of action is founded on federal law, the Court begins with consideration of that claim. Plaintiffs allege that defendants' threatened actions violate 42 U.S.C. § 1985(3).

Defendants conspired together with each other and other parties presently unknown for the purpose of denying women seeking abortions and other family planning services at targeted facilities the equal protection of the laws and the equal privileges and immunities under the law and obstructing travel, in violation of 42 U.S.C. § 1985(3). Defendants are and continue to be motivated by an invidiously discriminatory animus direct-

ed at the class of women seeking to exercise their constitutional and legal right to choose abortions and other family planning services at the targeted facilities, as well as at all facilities in the New York City area.

Plaintiffs' Complaint ¶ 59.

A cause of action under section 1985(3) has four essential elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (as explained in *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983)).[11] In addition, where the alleged conspiracy is aimed at a right that is by definition only a right against state interference, such as first and fourteenth amendment rights, the plaintiff in a section 1985(3) action must, as a necessary element of his or her claim, prove that the conspiracy contemplated state involvement of some sort. *United Brotherhood of Carpenters & Joiners v. Scott, supra,* 463 U.S. at 831–34, 103 S.Ct. at 3357–59.

A conspiracy is within the scope of section 1985(3) only if it is motivated by some class-based, invidiously discriminatory animus. The Supreme Court has thus far declined to rule whether section 1985(3) reaches conspiracies directed against a class identified by a characteristic other

---

**11.** 42 U.S.C. § 1985(3) provides in part:

If one or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any

case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

than race.[12] It is clear, however, that the statute does not "reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." *Id.* at 835–39, 103 S.Ct. at 3359–62 (emphasis in original).

■ The majority opinion among lower federal courts is that a gender-based animus satisfies the conspiracy requirement of section 1985(3). *E.g., Volk v. Coler,* 845 F.2d 1422, 1434 (7th Cir.1988); *Hunt v. Weatherbee,* 626 F.Supp. 1097, 1105 & n. 15 (D.Mass.1986); *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1218–19 (D.N.J.1984). *See generally* Annot. *Applicability of 42 USCS § 1985(3) to Sex–Based Discrimination,* 46 A.L.R.Fed. 342 (1980). This Court agrees, and holds that a conspiracy to deprive women seeking abortions of their rights guaranteed by law is actionable under section 1985(3).[13] Defendants have ad-

mitted that their activities are targeted at women who choose abortion. Exhibit A, annexed to Affidavit of Joan Gibbs (attached to Complaint). Plaintiffs, then, have adequately pleaded and proved the first element of a 1985(3) claim, based on the undisputed facts.

Plaintiffs assert two separate violations of section 1985(3): one based on a conspiracy to infringe their right to travel, and the other based on a conspiracy to infringe their right to choose an abortion.[14]

### a. *Right to Travel*

■ The right to travel includes the right to unimpeded interstate travel to obtain an abortion and other medical services. *Doe v. Bolton,* 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973). Plaintiffs have alleged a violation of their right to travel, and the undisputed facts establish that defendants' activities obstruct access

12. *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983) ("close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans"); *Griffin v. Breckenridge,* 403 U.S. 88, 102 n. 9, 91 S.Ct. 1790, 1798 n. 9, 29 L.Ed.2d 338 (1971) ("We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us.").

13. The Court finds quite persuasive plaintiffs' analogy between defendants activities, seeking forcibly to prevent women from exercising their constitutional right to decide whether to terminate a pregnancy, and the organized actions of the Ku Klux Klan that inspired the 42nd Congress to enact section 1985(3). Plaintiffs' Memorandum, filed December 21, 1989, at 32–33.

Moreover, the special protection accorded to women as a class under the equal protection clause of the fourteenth amendment, *e.g., Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), strongly suggests the propriety of recognizing a cause of action under section 1985(3) founded on a claim of gender-based animus.

Defendants argue that a section 1985(3) claim can be asserted only by persons who allege race-based animus. At the January 6, 1989 oral argument, defendants made reference to *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) and to *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). *See* Transcript of Hearing conducted January 6, 1989, at

45–46. These cases, respectively, recognize a section 1981 claim brought by an Arab–American and a section 1982 claim brought by a Jewish congregation and some of its individual members. Even if these cases could properly be construed as limiting the respective causes of action to "racial" discrimination, they would not control the instant case. Sections 1981 and 1982 specifically guarantee to all persons the same rights "enjoyed by white citizens." Section 1985(3), on the other hand, prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The language of section 1985(3) contains no indication that it was intended to be limited to racial classifications. The difference between sections 1981 and 1982, on the one hand, and section 1985(3) on the other, are borne out upon examination of the legislative histories. *Compare Saint Francis College v. Al–Khazraji, supra,* 107 S.Ct. at 2024 (discussing history of section 1981) *with Griffin v. Breckenridge, supra,* 403 U.S. at 100–02, 91 S.Ct. at 1797–98 (discussing history of section 1985(3)).

14. In addition, plaintiffs argue that defendants have violated section 1985(3) in conspiring to deprive them of their right to be free from gender-based discrimination, which is protected from private interference by section 40–c of the New York State Civil Rights Law. Because it is uncertain whether section 1985(3) reaches violations of rights protected by state law, *see, e.g., Traggis v. Saint Barbara's Greek Orthodox Church,* 851 F.2d 584, 588–90 (2d Cir.1988) (acknowledging conflicts in earlier decisions and declining to resolve the issue), the Court will not reach this claim.

to medical facilities to women who have traveled from out-of-state. Transcript of Hearing conducted October 27, 1988, at 186–87.[15] The stipulated facts submitted in connection with the demonstrations conducted in May of 1988 establish that defendants have committed the requisite overt act in furtherance of the conspiracy. *See generally* Statements of Stipulated Facts, filed May 4, 1988; July 19, 1988; and July 26, 1988. Defendants have repeatedly forcibly denied access to abortion facilities in the New York area, and they intend to continue to do so. Exhibit A, annexed to Gundrum Aff.; Exhibits 1 & 2, annexed to Plaintiffs' Notice of Filing, filed January 6, 1989. The injury element of plaintiffs' 1985(3) claim is made out simply by showing that defendants threaten to interfere with plaintiffs' exercise of their federally guaranteed right to travel. Because the right to travel is protected from purely private as well as from governmental interference, *e.g., Griffin v. Breckenridge, supra,* 403 U.S. at 105–06, 91 S.Ct. at 1799–1801 (citing cases), plaintiffs are not required to prove state involvement in order to prevail on this claim.

Thus, plaintiffs have adequately pleaded and established by undisputed facts all the elements of a violation of section 1985(3) based on infringement of their right to travel.

 b. *Right to Choose an Abortion*

 Where a claim under section 1985(3) is based on a conspiracy to deprive plaintiffs of their right to privacy, the plaintiff must demonstrate state involvement. *United Brotherhood of Carpenters & Joiners v. Scott, supra,* 463 U.S. at 833, 103 S.Ct. at 3358. By blocking access to abortion clinics in large numbers and by refusing to notify the police of their next target, defendants have acted to render police officials incapable of securing women who choose abortion equal access to medical treatment. Such action by private persons satisfies section 1985(3)'s requirement for state involvement.

If private persons take conspiratorial action that prevents or hinders the constituted authorities of any state from giving or securing equal treatment, the private persons would cause those authorities to violate the 14th Amendment; the private persons would then have violated § 1985(3).

*Great Am. Fed. Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 384, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring). *Accord United Brotherhood of Carpenters & Joiners v. Scott, supra,* 463 U.S. at 840 n. 2, 103 S.Ct. at 3362 n. 2.[16] It cannot be disputed that defendants' activities have the object of depriving women of their right to choose an abortion. The same uncontroverted facts that satisfy the overt act requirement in connection with plaintiffs' claim based on their right to travel, likewise meet the overt act requirement for this claim. Finally, defendants' actions threaten injury to the protected class of women seeking abortions.[17]

---

**15.** Defendants argue that the claim fails because a woman unable to gain access to a clinic may go elsewhere to obtain the medical care she requires. Defendants' Memorandum, filed October 26, 1988, at 8. This position can find no support in the law. Plaintiffs need not show that defendants' activities entirely thwart the protected interstate travel. Plaintiffs must show only that the exercise of the right was penalized. *E.g., Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). *See also Griffin v. Breckenridge, supra,* 403 U.S. at 105–06, 91 S.Ct. at 1799–1801 (plaintiffs would prevail on section 1985(3) claim upon showing that right to travel was "impaired").

**16.** Though not necessary to support their 1985(3) claim, plaintiffs have established an even greater level of involvement by state authorities in their conspiracy to deprive women of access to abortion facilities. At the October 29 demonstration in Dobbs Ferry, New York, defendants entered into an express agreement with police officers that no demonstrators would be arrested so long as they agreed to leave the site by noon of that day. Exhibits A & I, annexed to Gundrum Aff.

**17.** Defendants argue that they are entitled to further discovery on the issue of injury. Transcript of Hearing conducted January 6, 1989, at 37–38, 40. Defendants, however, presented no evidence in their papers opposing summary judgment that would bring into question the undisputed facts on the record. Absent a showing going beyond mere argument, and in view of the history of the case up to this point, the Court concludes that further discovery on the issue of injury is not required.

Since this Court has determined that plaintiffs are entitled to summary judgment on their section 1985(3) claim, it need not address in detail plaintiffs' pendent state law claims.[18]

## 2. Public Nuisance

Plaintiff-intervenor has alleged that defendants' activities constitute a public nuisance in that they are "designed to, and hav[e] the effect of, endangering the public security, safety and welfare of the City of New York and its residents, especially those women seeking to obtain abortions or other family planning or medical services at facilities where abortions are performed." Complaint of Plaintiff–Intervenor, filed July 7, 1988 ¶ 15. A public nuisance:

> consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to ... interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons.

*Copart Inds., Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977) (citations omitted).

Although a private litigant must show special damages in order to be entitled to relief on a cause of action for public nuisance, *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 334, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983), a governmental entity is not required to make such a showing. *See, e.g., State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1050–52 (2d Cir.1985) (injunction obtained by State of New York on public nuisance grounds without any finding of special damages). The City is entitled to bring a nuisance action to protect the health of its citizens. *New York Trap Rock Corp. v. City of Clarkstown,* 299 N.Y. 77, 83, 85 N.E.2d 873, 877 (1949) ("municipal corporation ... has the capacity and is a proper party to bring an action to restrain a public nuisance which allegedly has injured the health of its citizens").

Plaintiff-intervenor has pleaded and proved all the elements of its public nuisance claim. The right to obtain an abortion, and more generally, to have access to medical care, is a public right "common to all." It is undisputed that defendants' activities have the intended effect of

---

Defendants' own experts have testified that confronting an anti-abortion demonstration causes stress in a woman patient, Transcript of Hearing conducted October 25, 1988, at 53–54, 62–65, 94–95, 102, that interruption of a two-day abortion procedure causes increased medical risk, *id.* at 105, 129, and that the medical risks associated with an abortion increase with each passing week, *id.* at 116–17. *See generally* Transcript of Hearing conducted October 27, 1988, at 241–44 (decision of Court granting plaintiffs modified preliminary injunction). Moreover, the Court is of the view that any impediment to the exercise of a woman's constitutional right to choose and obtain an abortion constitutes irreparable harm, independent of any medical consequences. *Id.* at 244. *See also City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 449–51, 103 S.Ct. 2481, 2502–03, 76 L.Ed.2d 687 (1983) (invalidating city ordinance mandating 24 hour waiting period as an unwarranted burden on the right to obtain an abortion).

**18.** Because it was the subject of extensive argument by the parties at the January 6, 1989 oral argument, the Court will briefly address plaintiffs' fourth cause of action, sounding in trespass. Plaintiffs' Complaint ¶¶ 50–51.

Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner. The act must be intentional and the damages a direct consequence of the defendant's act. *Annutto v. Town of Herkimer,* 56 Misc.2d 186, 190, 288 N.Y.S.2d 79, 85 (Sup. Ct.), *aff'd in part and rev'd in part,* 31 A.D.2d 733, 297 N.Y.S.2d 295 (1968), *appeal dismissed,* 24 N.Y.2d 820, 300 N.Y.S.2d 596, 248 N.E.2d 449 (1969) (followed in *Malerba v. Warren,* 108 Misc.2d 785, 788, 438 N.Y.S.2d 936, 940 (Sup.Ct. 1981), *modified,* 96 A.D.2d 529, 464 N.Y.S.2d 835 (1983)). Defendants have repeatedly blocked the doorways to abortion facilities in the past, and threaten to block access to plaintiff facilities. A blockade is an intentional, unlawful act which clearly interferes with plaintiffs' right to possession of the facility. Damages to the target facility and to the women who attempt to use the facility are direct consequences of the blockade. Accordingly, plaintiffs have established the elements of their trespass claim based on the undisputed facts and are entitled to summary judgment on that claim.

shutting down clinics, which in turn causes delay or an absolute loss of a woman's ability to obtain an abortion or other medical services. Defendants, then, have interfered with the public's common right to obtain medical services, and have injured the health of a considerable number of persons. Moreover, defendants' activities have in the past and threaten in the future to obstruct vehicular and pedestrian traffic in violation of N.Y.Penal Law § 240.20 subd. 5 (McKinney 1980). Plaintiff-intervenor is therefore entitled to summary judgment on its claim of public nuisance.[19]

### D. The Propriety of Permanent Injunctive Relief

Having determined that plaintiffs are entitled to judgment on the merits, the Court must consider the appropriate remedy. Plaintiffs seek a permanent injunction prohibiting defendants and those acting in concert with them from blocking access to abortion facilities, and from harassing women who seek to use the facilities. They further seek the imposition of prospective civil contempt penalties.

### 1. Injunctive Relief

█ Once plaintiffs have demonstrated success on the merits, permanent injunctive relief is available if "there is no adequate remedy at law [and] the balance of equities favor[s] the moving party." *Galella v. Onassis*, 353 F.Supp. 196, 235 (S.D.N.Y. 1972), *aff'd in part and rev'd in part on other grounds*, 487 F.2d 986 (2d Cir.1973). *Accord Smithkline Beckman Corp. v. Proctor & Gamble Co.*, 591 F.Supp. 1229, 1235 (N.D.N.Y.1984) ("the Court must ... decide whether the balance of equities favors injunctive relief; and if so, what form it should take"), *aff'd without opinion*, 755 F.2d 914 (2d Cir.1985); *Sierra Club v. Alexander*, 484 F.Supp. 455, 471 (N.D.N.Y.), *aff'd without opinion*, 633 F.2d 206 (2d Cir.1980). Plaintiffs must demonstrate a real danger that the act complained of will actually take place. There must be more than a mere possibility or fear that the injury will occur. 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2942 (1973), at 369.

█ It is clear in this case that there is no adequate remedy at law. Plaintiffs cannot be compensated adequately with money damages for the interference with their right to choose an abortion. A woman who encounters a blockade while attempting to enter an abortion facility and is therefore unable to keep her appointment suffers irreparable physical and emotional harm. *See* note 17, *supra*.[20] The inability of local police officers to ensure access to targeted clinics in the face of defendants' blockades renders necessary the injunctive relief requested by plaintiffs.

Balancing the equities of the matter, the Court concludes that it is imperative to protect plaintiffs' right to choose an abortion and to obtain medical care at the targeted facilities. A carefully crafted injunction can accomplish this purpose without intruding upon defendants' first amendment rights to picket and to express their views.[21] The public interest in ensuring

---

**19.** Plaintiffs assert a private right of action for public nuisance. Plaintiffs' Complaint ¶ 45. To support a private action for public nuisance, the complainant must establish special damages " 'of a different kind from that suffered by other persons exercising the same public right.' " *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 334, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983) (quoting Restatements, Torts 2d, § 821C, Comment b). Because it is unclear at this time what special damages plaintiffs assert to support their cause of action for public nuisance, and because the Court has determined that plaintiffs are entitled to summary judgment on the basis of their section 1985(3) and their trespass claims, the Court declines to rule on plaintiffs' cause of action for public nuisance.

**20.** There is no independent requirement that plaintiffs establish irreparable harm in order to be entitled to permanent injunctive relief. Rather, irreparable injury provides one basis for showing the inadequacy of any legal remedy. C. Wright & A. Miller, *Federal Practice & Procedure* § 2944 (1973), at 401 (quoted in *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985)).

**21.** The Court notes that the injunction in this case is much narrower than the injunction recently upheld by the Ninth Circuit against a first amendment challenge. *Portland Feminist Wom-*

the availability of health care supports the granting of injunctive relief.

The threat of future demonstrations in and around New York is real and concrete. Twice before, in May and October of 1988, defendants have followed threats of activities in New York with demonstrations that have shut down the targeted abortion facilities for several hours. Now they promise to return in greater force. The pattern of defendants' past activity, coupled with the planned demonstrations, leads the Court to the firm conclusion that plaintiffs face a real and immediate threat. In the exercise of its discretion,[22] the Court has determined that permanent injunctive relief is appropriate in this case.

### 2. Prospective Civil Contempt Penalties

In view of defendants' past non-compliance with the Court's injunctive orders and their stated intention to block access to clinics without regard to any order issued by the Court, the Court considers it necessary to impose prospective civil contempt penalties in order to enforce compliance with its injunction.

■ When imposing civil contempt sanctions for the purpose of coercing compliance with the court's order, a district court should consider the following circumstances: (1) the character and magnitude of the harm threatened by continued contempt; (2) the probable effectiveness of the proposed sanction; and (3) the financial consequences of the sanction upon the contemnor and the consequent seriousness of the burden of the sanction upon him. *E.g., In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir.1987), *cert. denied,* —— U.S.

——, 108 S.Ct. 1602, 99 L.Ed.2d 917 (1988); *Dole Fresh Fruit Co. v. United Banana, Inc.,* 821 F.2d 106, 110 (2d Cir.1987). These factors are only guides to be used when and where they are appropriate. *In re Grand Jury Witness, supra,* 835 F.2d at 443. The district court has broad discretion to design a remedy that will bring about compliance. *Perfect Fit Inds., Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

Plaintiffs seek prospective penalties against defendants and those acting in concert with them in the amount of $25,000 per day, to be doubled for successive violations of the Court's order. In addition, plaintiff-intervenor seeks to recover excess costs incurred by it in the event Operation Rescue participants fail to give the New York City Police Department twelve hours' advance notice of the location of each day's demonstrations. Defendants argue that any penalties imposed should be merely nominal.

■ For the reasons stated in its October 27 Opinion, *See* October 27 Opinion, 697 F.Supp. at 1332–34, the Court concludes that daily fines of $25,000 are by no means excessive, and compensation to the City is entirely appropriate. On the other hand, in view of defendants' activities in May and October of 1988, in violation of similar injunctive orders containing like penalties, $25,000 daily penalties may not be sufficient. Accordingly, the Court will impose a $25,000 fine on any Operation Rescue participant who violates the Order with actual notice of its provisions, and this daily penalty shall be doubled for each successive

---

*en's Health Center v. Buhler,* 859 F.2d 681 (9th Cir.1988). The only activities prohibited by this Court's order are the blocking of access to abortion facilities and physically abusing or tortiously harassing persons entering or leaving the facilities. The injunction upheld by the Ninth Circuit, as modified, prohibited all of the following acts: (1) obstructing the free and direct passage of any person in or out of the clinic; (2) demonstrating or distributing literature on the sidewalk in front of the clinic in a rectangular zone that extends from the clinic's front door to the curb and twelve and one-half feet on either side of a line from the middle of the clinic's door to the curb; (3) shouting, screaming, chanting, or yelling or producing noise by any

other means, in a volume that substantially interferes with the provision of medical services within the Center, including counseling. *Id.* at 684, 687. A comparison can leave no doubt as to the reasonableness of this Court's injunction and the care it has taken to protect defendants' legitimate first amendment rights.

22. "Perhaps the most significant single component in the judicial decision whether to exercise equity jurisdiction and grant permanent injunctive relief is the court's discretion." 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2942 (1973), at 365.

violation of the Order. In addition, Operation Rescue participants shall be jointly and severally liable to pay any excess costs incurred by the City of New York as a result of Operation Rescues participants' failure to provide the City with twelve hours' advance notice of the location of their demonstrations. Furthermore, in view of defendants' stated intention to make the enforcement of this Court's orders as costly as possible to plaintiffs, any Operation Rescue participant who knowingly violates the Order shall be liable for all attorneys' fees and related costs incurred by plaintiffs in relation to enforcement of this Order. In the event these penalties too fail to secure compliance of the Court's order, more severe penalties will have to be considered.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied. Plaintiffs' motion for summary judgment, joined by plaintiff-intervenor, is granted.

Permanent injunction issued January 10, 1989.